UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>Case No. 1:18-op-45173<br><br>*Skagit County, et al. v. Purdue Pharma, et al.* | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster<br><br>**SHORT FORM FOR SUPPLEMENTING COMPLAINT AND AMENDING DEFENDANTS AND JURY DEMAND – SECOND SUPPLEMENT** |

Plaintiffs Skagit County, City of Mount Vernon, City of Sedro-Woolley, City of Burlington, La Conner School District, and Mount Vernon School District ("Plaintiffs") submit this supplemental pleading and Amended Complaint incorporating as if fully set forth herein thier own prior pleadings and, if indicated below, the common factual allegations identified and the RICO causes of action included in the Corrected Second Amended Complaint and Jury Demand in the case of *The County of Summit, Ohio, et al., v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45090 ("*Summit County* Pleadings"), *In Re National Prescription Opiate Litigation*, in the United States District Court for the Northern District of Ohio, Dkt #513, 514[1]), and as may be amended in the future, and any additional claims asserted herein. Plaintiffs also hereby amend their complaint to alter the defendants against which claims are asserted as identified below. To

---

[1] Docket #513 is the redacted Summit Second Amended Complaint and Docket #514 is the unredacted Summit Corrected Second Amended Complaint filed under seal in Case No. 1:17-md-02804-DAP. The redacted Summit Corrected Second Amended Complaint is also filed in its individual docket, Case No. 1:18-op-45090-DAP, Docket #24.

the extent defendants were previously sued in Plaintiffs' existing complaint and they are no longer identified as defendants herein, they have been dismissed without prejudice except as limited by CMO-1, Section 6(e). Dkt. #232.

## INCORPORATION BY REFERENCE OF EXISTING COMPLAINT

1. Plaintiffs' Existing Complaints (No. 1:18-op-45173, Doc. #14, 24, and 26) are expressly incorporated by reference to this Second Supplemental Short Form as if fully set forth herein except to the extent that allegations regarding certain defendants that are not listed in section 2 below are dismissed without prejudice.

## PARTIES – DEFENDANTS

2. Having reviewed the relevant ARCOS data,[2] Plaintiffs assert claims against the following Defendants:

Purdue Pharma, L.P.;
Purdue Pharma, Inc.;
The Purdue Frederick Company, Inc.;
Endo Health Solutions Inc.;
Endo Pharmaceuticals, Inc.;
Janssen Pharmaceuticals, Inc.;
Johnson & Johnson;
Teva Pharmaceuticals Industries, Ltd.;
Teva Pharmaceuticals USA, Inc.;
Cephalon, Inc.;
Allergan PLC f/k/a Actavis PLC;
Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.;
Watson Laboratories, Inc.;
Actavis LLC;
Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.;
Mallinckrodt plc;
Mallinckrodt, LLC;

---

[2] Pursuant to the Court's November 8, 2018 Order Regarding Plaintiff's Motion for Modification of CMO-1 (Dkt. 1106), the ARCOS data provided to Plaintiff reflects: "the names of all labelers (as identified by NDC code) who manufactured and/or labeled more than five percent (5%) of the market share of opioids distributed in the relevant county or county-equivalent in at least three of the nine years available in the ARCOS data" and "the name of each distributor who distributed more than five percent (5%) of the market share of opioids distributed in the relevant county or county-equivalent in at least three of the nine years available in the ARCOS data."

2

SpecGX LLC;
Cardinal Health, Inc.;
McKesson Corporation;
AmerisourceBergen Drug Corporation;
Par Pharmaceutical Companies, Inc.;
Par Pharmaceutical, Inc.;
West-Ward Pharmaceutical Corp.;
Hikma Pharmaceuticals PLC;
Amneal Pharmaceuticals, LLC;
Amneal Pharmaceuticals, Inc.;
Impax Generics;
Impax Laboratories, Inc.;
Walgreens Boots Alliance Inc. a/k/a Walgreen Co;
Walmart, Inc.
Thrifty Payless, Inc.;
Rite Aid Corporation;
CVS Health Corporation;
CVS Pharmacy Inc.;
CVS RX Services, Inc.;
Advantage Logistics;
Dakota Drug, Inc.;
Richard S. Sackler;
Jonathan D. Sackler;
Mortimer D.A. Sackler;
Kathe A. Sackler;
Ilene Sackler Lefcourt;
Beverly Sackler;
Theresa Sackler;
David A. Sackler;
Trust for the Benefit of Members of the Raymond Sackler Family;
Rhodes Pharmaceuticals L.P.;
Rhodes Technologies Inc.;
Rhodes Pharmaceuticals Inc.;
Rhodes Technologies; and
John and Jane Does 1 through 100, Inclusive.

**I, David J. Ko, Counsel for Plaintiffs, certify that in identifying all Defendants, I have followed the procedure approved by the Court and reviewed the ARCOS data that I understand to be relevant to Plaintiffs.**

**I further certify that, except as set forth below, each of the Defendants newly added herein appears in the ARCOS data I reviewed.**

**I understand that for each newly added Defendant not appearing in the ARCOS data I must set forth below factual allegations sufficient to state a claim against any such newly named Defendant that does not appear in the ARCOS data.**

**The following newly added Defendants** *do not appear* **in the ARCOS data I reviewed:**

Walmart, Inc.;
CVS Health Corporation;
CVS Pharmacy Inc.; and
CVS RX Services, Inc.

**Dated:** March 19, 2021          **Signed:** /s/ *David J. Ko*

### FACTUAL ALLEGATIONS REGARDING INDIVIDUAL DEFENDANTS - SUPPLEMENTED

2.1    Defendants include the entities identified below as well as their predecessors, successors, affiliates, subsidiaries, partnerships and divisions to the extent that they are engaged in the manufacture, promotion, distribution sale and/or dispensing of opioids.

**Walgreens**

2.2    Defendant Walgreens Boots Alliance Inc. a/k/a Walgreen Co. ("Walgreens") is a Delaware corporation with its principal place of business in Illinois. Walgreens, through its various DEA registrant subsidiaries and affiliated entities, conducts business as a licensed wholesale distributor. At all times relevant to this Complaint, Walgreens distributed and dispensed prescription opioids throughout the United States, including in Plaintiffs' communities.

2.3    Based on the private ARCOS data made available to Plaintiffs, drugs sold and distributed by Walgreens represent a substantial market share in Plaintiffs' jurisdictions during the relevant time period.

4

2.4     Walgreens' conduct thus directly caused the worst man-made epidemic in modern medical history—the misuse, abuse, and over-prescription of opioids across this country, including in this jurisdiction.

**Walmart**

2.5     Defendant Walmart, Inc. is a Delaware corporation with its principal place of business in Arkansas. Walmart, through its various DEA registrant subsidiaries and affiliated entities, conducts business as a licensed wholesale distributor. At all times relevant to this Complaint, Walmart, Inc. distributed and dispensed prescription opioids throughout the United States, including in Plaintiffs' communities.

2.6     Walmart, Inc.'s conduct thus directly caused the worst man-made epidemic in modern medical history—the misuse, abuse, and over-prescription of opioids across this country, including in this jurisdiction.

**Rite Aid Corporation**

2.7     Defendant Rite Aid Corporation is a Delaware corporation with its principal place of business in Camp Hill, Pennsylvania.

2.8     At all times relevant to this Complaint, Rite Aid Corporation was in the business of distributing and redistributing and dispensing prescription opioids throughout the United States, including in this jurisdiction.

2.9     Based on the private ARCOS data made available to Plaintiffs, drugs sold and distributed by Rite Aid Corporation represent a substantial market share in Plaintiffs' jurisdictions during the relevant time period.

2.10     Rite Aid Corporation's conduct thus directly caused the worst man-made epidemic in modern medical history—the misuse, abuse, and over-prescription of opioids across this country, including in this jurisdiction.

**CVS**

2.11     Defendant CVS Health Corporation is a Delaware corporation with its principal place of business in Rhode Island.

2.12     Defendant CVS Pharmacy Inc. is a Rhode Island corporation with its principal place of business in Rhode Island.

2.13     CVS Health Corporation conducts business as a licensed wholesale distributor under the name of Defendant CVS RX Services, Inc., among others.

2.14     CVS Health Corporation, CVS Pharmacy Inc., CVS RX Services, Inc., and all related entities including all predecessors and successors and subsidiaries, including but not limited to Defendant Omnicare, Inc., are referred to collectively as "CVS."

2.15     CVS, through its various DEA-registrant subsidiaries and affiliated entities, conducts business as a licensed wholesale distributor. At all times relevant to this Complaint, CVS distributed and dispensed prescription opioids throughout the United States, including in Plaintiffs' communities.

2.16     CVS's conduct thus directly caused the worst man-made epidemic in modern medical history—the misuse, abuse, and over-prescription of opioids across this country, including in this jurisdiction.

2.17     Together, Walgreens, Walmart, Inc., Rite Aid Corporation, and CVS are referred to as the "National Retail Chain Pharmacy Defendants."

6

**Factual Allegations**

2.18 The National Retail Chain Pharmacy Defendants earned enormous profits by flooding the country with prescription opioids. They were keenly aware of the oversupply of prescription opioids through the extensive data and information they developed and maintained as both distributors and retail sellers of opioids. Yet, instead of taking any meaningful action to stem the flow of opioids into communities, they continued to participate in the oversupply and profit from it.

2.19 Each of the National Retail Chain Pharmacy Defendants does substantial business across the United States. This business includes the distribution and sale of prescription opioids.

2.20 Statewide ARCOS data confirms that the National Retail Chain Pharmacy Defendants distributed and dispensed substantial quantities of prescription opioids, including fentanyl, hydrocodone, and oxycodone, in Plaintiffs' jurisdictions and through the migration of pills to Plaintiffs' jurisdictions. In addition, they distributed and dispensed substantial quantities of prescription opioids in other states, and these drugs were diverted from these other states to and around Plaintiffs' jurisdictions. The National Retail Chain Pharmacy Defendants failed to take meaningful action to stop this diversion despite their knowledge of it, and thus contributed substantially to the diversion problem.

2.21 The National Retail Chain Pharmacy Defendants maintain extensive data on all of the drugs they dispensed, including opioids. Through this data, the National Retail Chain Pharmacy Defendants have direct knowledge of patterns and instances of improper distribution, prescribing, sale, dispensing, and use of prescription opioids in communities throughout the country, including in Plaintiffs' jurisdictions. They used the data to evaluate their own sales activities and workforce. The National Retail Chain Pharmacy Defendants also provided data

regarding individual doctors to other drug companies, which targeted those prescribers with their marketing, in exchange for rebates or other forms of consideration.

2.22    The National Retail Chain Pharmacy Defendants' data could and should have been used to help stop diversion and identify suspicious orders and red flags in the dispensing of prescription opioids. Instead, the National Retail Chain Pharmacy Defendants distributed and dispensed opioids at rates that far exceeded those necessary for legitimate medical use by the local population. The failure of the National Retail Chain Pharmacy Defendants to maintain effective controls against diversion—including to investigate, identify, report, and take steps to halt orders and the dispensing of prescription opioids that they knew or should have known were suspicious—as well as to maintain effective policies and procedures to guard against diversion from their retail stores, substantially contributed to the opioid epidemic in Plaintiffs' jurisdictions.

2.23    Each participant in the supply chain of opioid distribution, including the National Retail Chain Pharmacy Defendants, is responsible for preventing diversion of prescription opioids into the illegal market by, among other things, monitoring, and reporting suspicious activity. The National Retail Chain Pharmacy Defendants are required to register as distributors or dispensers pursuant to 21 U.S.C. § 823 and 21 C.F.R. §§ 1301.11, 1301.74.

2.24    According to the CDC, opioid prescriptions, as measured by number of prescriptions and MMEs per person, tripled from 1999 to 2015. In 2015, on an average day, more than 650,000 opioid prescriptions were dispensed in the U.S. Not all of these prescriptions were legitimate. Yet, the National Retail Chain Pharmacy Defendants failed to maintain effective controls against diversion at both the wholesale and retail level, systematically ignoring red flags of diversion. Instead, they prioritized profits over public health and safety. Despite their legal

obligations as registrants under the CSA, the National Retail Chain Pharmacy Defendants knowingly allowed widespread diversion to occur.

2.25 The National Retail Chain Pharmacy Defendants failed to establish or adequately implement policies that would allow their pharmacists and pharmacy technicians to conduct due diligence related to prescriptions for opioid painkillers and in fact implemented policies that did the opposite, mandating or incentivizing high-volume sales and rapid processing of prescriptions. Upon information and belief, the National Retail Chain Pharmacy Defendants also failed to effectively respond to concerns raised by their own employees regarding suspected diversion of opioids. In addition, the National Retail Chain Pharmacy Defendants did not take steps to analyze their own dispensing data for red flags of diversion. The National Retail Chain Pharmacy Defendants had the ability, and the obligation, to look for these red flags on a patient, prescriber, and store level, and to refuse to fill and to report prescriptions that suggested potential diversion.

2.26 As acknowledged in an article CVS published in the New England Journal of Medicine, "[p]harmacies have a role to play in the oversight of prescriptions for controlled substances, and opioid analgesics in particular." Mitch Betses, R.Ph., and Troyen Brennan, M.D., M.P.H., *Abusive Prescribing of Controlled Substances - A Pharmacy View*, N. ENGL. J. MED. 369;11, Sept. 12., 2013, at 989-991. The DEA has identified "both pharmaceutical distributors and chain pharmacies as part of the problem" contributing to opioid abuse and related deaths. *Id.*

2.27 The National Retail Chain Pharmacy Defendants have a particular "advantage" in meeting their obligations under the CSA because these entities can use "aggregated information on all prescriptions filled at the chain" in order to examine "patterns" of opioids and other "high-risk drugs" and target "inappropriate prescribing." *Id.* at 990. For example, a chain pharmacy

should properly use its chainwide dispensing data to identify "high risk prescribers" by "benchmarking" prescription data based on "several parameters," including "volume of prescriptions for high-risk drugs," "the proportion of the prescriber's prescriptions that were for such [high-risk] drugs, as compared with the volume and proportion for others in the same specialty and region," cash payment, ages of patients, and the prescriber's ratio of "prescriptions for noncontrolled substances with prescriptions for controlled substances." *Id.* This "[a]nalysis of aggregated data" from chain pharmacies can "target patterns of abuse," in the face of "the growing use of controlled substances and resulting illnesses and deaths." *Id.* Accordingly, as CVS explains, "innovative use of transparent data is only prudent." *Id.*

      2.28    As CVS counseled, Defendants may not ignore red flags of illegal conduct and must use the information available to them to identify, report, and not fill prescriptions that seem indicative of diversion. This includes reviewing the aggregated information available to them. Specifically, the National Retail Chain Pharmacy Defendants had a duty to analyze data and store-level information for known red flags such as (a) multiple prescriptions to the same patient using the same doctor; (b) multiple prescriptions by the same patient using different doctors; (c) prescriptions of unusual size and frequency for the same patient; (d) orders from out-of-state patients or prescribers; (e) an unusual or disproportionate number of prescriptions paid for in cash; (f) prescriptions paired with other drugs frequently abused with opioids, like benzodiazepines, or prescription drug "cocktails"; and (g) volumes, doses, or combinations that suggested that the prescriptions were likely being diverted or were not issued for a legitimate medical purpose.

2.29     The National Retail Chain Pharmacy Defendants knew or should have known that the quantities of opioids they were distributing and dispensing was unreasonable and contributing to the opioid crisis engulfing the country.

## PERSONAL JURISDICTION

2.30     Defendants are subject to personal jurisdiction in this judicial district because they transact and/or have transacted business in this State and within Plaintiffs' communities. Additionally, each Defendant solicited business within this District, engaged in a persistent course of conduct, and/or derived substantial revenue from goods used and services rendered in this State and in this District through interstate commerce. All Defendants purposefully availed themselves of the benefits, profits, and privileges deriving from their business activities in this State.

2.31     Each Defendant regularly engages in business within the State and within this District. Each Defendant has committed tortious acts that have injured Plaintiffs. Each Defendant expects, or reasonably should have expected, those acts to have consequences in this State and within Plaintiffs' communities.

2.32     Each Defendant is engaged in the business of manufacturing and/or distributing prescription opioids, directly or through third-party entities, in the State and within Plaintiffs' communities. Each Defendant's activities in Plaintiffs' communities related to the manufacture and distribution of prescription opioids were, and are, continuous and systematic, giving rise to Plaintiffs' causes of action.

## COMMON FACTUAL ALLEGATIONS

3.     By checking the boxes in this section, Plaintiffs hereby incorporate by reference to this document the common factual allegations set forth in the *Summit County* Pleadings as identified in the Court's Order implementing the Short Form procedure.  Dkt. # 1282.

11

☒ Common Factual Allegations (Paragraphs 130 through 670 and 746 through 813)
☒ RICO Marketing Enterprise Common Factual Allegations  (Paragraphs 814-848)
☒ RICO Supply Chain Enterprise Common Factual Allegations  (Paragraphs 849-877)

4. If additional claims are alleged below that were not pled in Plaintiffs' Existing Complaint (other than the RICO claims asserted herein), the facts supporting those allegations must be pleaded here.  Plaintiffs assert the following additional facts to support the claim(s) identified in Paragraph 6 below (below or attached):

## CLAIMS

5. The following federal **RICO causes of action** asserted in the *Summit County* Pleadings as identified in the Court's implementing order and any subsequent amendments, Dkt. #1282, are incorporated in this Short Form by reference, in addition to the causes of action already asserted in the Plaintiffs' Existing Complaint (check all that apply):

☒ First Claim for Relief – Violation of RICO, 18 U.S.C. § 1961 *et seq*. – Opioid Marketing Enterprise (Against Defendants Purdue, Cephalon, Janssen, Endo and Mallinckrodt (the "RICO Marketing Defendants")) (*Summit County* Pleadings, Paragraphs 878-905)

☒ Second Claim for Relief – Violation of RICO, 18 U.S.C. § 1961 *et seq*. – Opioid Supply Chain Enterprise (Against Defendants Purdue, Cephalon, Endo, Mallinckrodt, Actavis, McKesson, Cardinal, and AmerisourceBergen (the "RICO Supply Chain Defendants")) (*Summit County* Pleadings, Paragraphs 906-938)

6. Plaintiffs assert the following **additional claims** as indicated (below or attached):

7. To the extent Plaintiffs wish to **dismiss claims** previously asserted in Plaintiffs' Existing Complaint, they are identified below and will be dismissed without prejudice.

WHEREFORE, Plaintiffs pray for relief as set forth in the *Summit County* Pleadings in *In Re National Prescription Opiate Litigation* in the United States District Court for the Northern District of Ohio, MDL No. 2804 and in Plaintiffs' Existing Complaint as has been amended herein.

Dated: <u>March 19, 2021</u>                     <u>/s/ *David J. Ko*            </u>
                                                                   *Attorney for Plaintiffs*